UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re SHEFA, LLC,

        Debtor,

_____/

SHEFA, LLC,
                             Civil Case No. 15-10665
                             Honorable Linda V. Parker

        Appellant/Counter-Appellee,         Bankruptcy Case No. 14-42812

v.

OAKLAND COUNTY TREASURER,

        Appellee/Counter-Appellant.

_____/

## OPINION AND ORDER

      This matter is before the Court as an appeal from the United States Bankruptcy Court for the Eastern District of Michigan.  Debtor and Appellant/Cross-Appellee, Shefa, LLC (hereafter "Debtor"), appeals the following decisions entered by the Honorable Phillip J. Shefferly: (A) a January 20, 2015 "Opinion (1) Sustaining in Part Debtor's Objection to Proof of Claim; (2) Denying Confirmation of Debtor's Plan of Reorganization; and (3) Granting Motion for Relief from the Automatic Stay"; (B) a January 20, 2015 order consistent with that opinion; and, (C) a February 9, 2015 "Order Denying Motion for Reconsideration and For Other Relief."  Claimant and Appellee/Counter-Appellant, Oakland County Treasurer (hereafter "Oakland County"), has filed a cross-appeal.  Debtor filed an initial appeal brief on April 2,

2015 (ECF No. 8); Oakland County filed a responsive brief on April 16, 2015.  (ECF No. 9.)  Debtor filed a reply brief on April 30, 2015.  (ECF No. 10.)  Debtor has requested oral argument "because of the fact-intensive issues presented on appeal." (ECF No. 8 at Pg ID 752.)  The Court, however, finds the facts and legal arguments sufficiently presented in the parties' pleadings and in the bankruptcy court's January 20, 2015 decision.  Therefore, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.      Standard of Review

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard.  Fed. R. Bankr. P.  8013.  "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.' "  *United States v. Mathews (In re Matthews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). The bankruptcy court's conclusions of law are reviewed de novo.  *Nuvell Credit Corp. v. Westfall (In re Westfall)*, 599 F.3d 498, 501 (6th Cir. 2010).  This means the Court reviews the law independently and gives no deference to the conclusions of the bankruptcy court.  *Myers v. IRS (In re Meyers)*, 216 B.R. 402, 403 (B.A.P. 6th Cir.1998).  "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply the appropriate standard

2

of review for each part." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993).

## II.     Factual and Procedural Background

Debtor filed this Chapter 11 bankruptcy case on February 25, 2014. Debtor's sole asset is a vacant hotel located at 16400 J.L. Hudson Drive, Southfield, Michigan ("Hotel"). Oakland County is Debtor's largest creditor, having filed a proof of claim on February 26, 2014 for real property taxes and water and sewerage charges for the Hotel totaling $3,665,155.82, which Oakland County identified as a secured claim. Debtor identified few additional creditors on its bankruptcy schedules. On June 4, 2014, Debtor filed an objection to the Oakland County claim.

Prior to that time, Oakland County moved for relief from the automatic stay and Debtor filed a Disclosure Statement and Combined Plan of Reorganization. The bankruptcy court concluded that an evidentiary hearing was necessary to resolve disputed issues of fact relevant to the matters before the court. A two-day hearing ensued. On January 20, 2015, the bankruptcy court issued a decision. *In re Shefa LLC*, 524 B.R. 717 (Bankr. E.D. Mich. Jan. 20, 2015). This Court will not restate the facts found by the bankruptcy court in that decision except to the extent relevant to the present appeal. The Court assumes the reader's familiarity with those facts, however.

Sidney Elhadad, an attorney from Montreal, Canada, is Debtor's sole member. Elhadad formed Debtor to purchase the first mortgage on the Hotel from Grand Pacific Finance Corporation ("Grand Pacific"), which had an outstanding balance of

over $10.3 million.  Debtor purchased the mortgage from Grand Pacific for

$165,000.00.  Debtor then completed a foreclosure sale on the Hotel, with  a sheriff's

deed for the Hotel executed and delivered to Debtor on November 10, 2009.

At that time, there were substantial delinquent taxes and water and sewerage

charges owed by the Hotel to the City of Southfield ("City").  Taxes for the Hotel had

not been paid since 2005.  The last payment on water and sewerage charges occurred

in July 2009.  Elhadad hoped that he could negotiate a deal with the City to make a

discounted lump sum payment for the outstanding amounts.  He was unsuccessful in

reaching such an agreement, however.

In addition, the Hotel experienced higher vacancy rates and poorer collections

than Elhadad had anticipated.  Elhadad personally contributed approximately $1.5

million to fund the Hotel's operating losses, but it was not enough.  The Hotel closed

in October 2010, and was subsequently boarded up.

Under Michigan law, cities turn over unpaid taxes and water and sewerage

charges to the local counties for collection after one year of delinquency.  Oakland

County therefore held the City's claim against the Hotel.  Oakland County moved to

foreclose on the Hotel pursuant to its statutory authority under Michigan law.  Debtor

then filed this Chapter 11 case.

As mentioned, Debtor listed few creditors on its bankruptcy schedules.  Four

secured claims were identified: (1) the Oakland County claim listed in an unknown

amount; (2) Elbaz Building in the amount of $269,800.00; (3) Professionally Driven,

4

LLC in the amount of $3,500.00; and (4) Fernand Soultan in the amount of $3 million. Two unsecured creditors were identified: (1) Ieshula Ishakis for $189,541.00; and (2) King Solomon Properties, LLC for $282,000.00.

Based on testimony of a certified commercial real estate appraiser, the bankruptcy court concluded that the Hotel's value was $690,000.00 as of two months after the petition date. The Hotel's value had decreased significantly since December 31, 2008 (from $1.57 million) due to its deteriorating condition and location in a declining area. The appraiser opined that the highest and best use of the Hotel would be for senior housing and medical facilities.

The Combined Disclosure Statement and Plan of Reorganization (hereafter "Plan") submitted by Debtor prior to the evidentiary hearing proposes renovating and reopening the Hotel for use as a combined upper mid-scale limited service hotel, upper mid-scale extended stay hotel, and independent living facility. The Plan states that financing would be provided by SMi ENERPRO, consisting of approximately $2 million of financing, together with a Small Business Administration guaranteed loan. The Plan also proposes that Elhadad would provide funding either individually or through one of his entities.

By the time of the evidentiary hearing before the bankruptcy court, however, the Plan had been modified in that Debtor proposed that the financing to renovate the Hotel and make Plan payments would be provided by KFG Southfield, LLC. KFG

5

was formed by Salomon Knafo, a long-time acquaintance of Elhadad, who is involved in investing, purchasing, and selling distressed real properties.

In November 2014, KFG entered into two agreements with Debtor: a loan agreement and a letter of intent. The loan agreement provides for KFG to loan up to $50,000.00 to Debtor for repairs to the Hotel. The letter of intent provides that KFG would contribute a total of $2 million of equity in consideration for a 60% partnership interest in the Hotel. Knafo indicated at the evidentiary hearing, however, that KFG is not presently committed to provide any funds to Debtor under either agreement. The terms of the loan agreement and letter of intent also reflect that both are non-binding.

The Plan specifies three classes of claims and one class of equity interests, with the class one claim consisting of the Oakland County claim. Based on Debtor's objection to the Oakland County claim, the Plan states that the allowed amount of the claim is limited to $690,000.00. The Plan provides for a lump sum payment in that amount to Oakland County on the effective date of the Plan, which the Plan defines as eleven days after the order confirming the Plan becomes a final order.

Class two of the Plan consists of a secured claim in the amount of $3,5000.00 held by Professionally Driven. The Plan provides for payment in full of this claim by 35 monthly installments with no interest. Professionally Driven voted to accept the Plan.

The Plan identifies class three as consisting of general unsecured claims, which the Plan describes as aggregating $3,741,341.00. The Plan lists four creditors in this

6

class: Ieshula Ishakis and King Solomon Properties, LLC (listed on Debtor's schedules as unsecured creditors) and Elbaz Building and Fernand Soultan (listed as secured creditors). The Plan provides for payment of 2% to class three claims, without interest, in 120 monthly installments beginning on the effective date of the Plan. By the time of the evidentiary hearing, however, Debtor had modified this aspect of the Plan to now pay 30% to class three creditors, thereby increasing payments to those creditors from $74,826.82 to $1,122,402.30. This resulted in an increase in Debtor's monthly payments to class three creditors from $623.56 to $9,353.35. Ishakis, Elbaz Building, and Soultan voted to accept the Plan. Debtor did not receive a ballot form King Solomon Properties.

The Plan does not contain a class four or class five, but specifies that class six consists of the equity interest in the Debtor.

At the evidentiary hearing, Elhadad acknowledged that he does not have a commitment from anyone to provide the funds necessary to implement the Plan if KFG does not provide the funds. Elhadad admitted that he has expended all of his funds and presently has no funds of his own with which to fund the Plan.

In the January 20, 2015 decision, the bankruptcy court (1) sustained in part Debtor's objection to the Oakland County claim; (2) denied confirmation of Debtor's Plan, as amended; and (3) granted Oakland County's relief from the automatic stay. With respect to Debtor's objection to the Oakland County claim, the bankruptcy court concluded that the water and sewerage charges totaling $1,870.198.12 did not

7

constitute a tax, although the charges were secured by property of the estate. *In re Shefa*, 524 B.R. at 731. The bankruptcy court disallowed the amount claimed for property taxes exceeding the $690,000 value of the Hotel under § 502(b)(3) of the Bankruptcy Code, 11 U.S.C. § 502(b)(3). *Id.* at 731-32. The bankruptcy court held that the remaining balance ($1,226,781.57) is disallowed under § 502(b)(3) and extinguished,[1] and that 11 U.S.C. § 1111(b)(1)(A) does not apply to that amount although it does apply to the water and sewerage charges.[2] *Id.* at 737, 739-40.

The bankruptcy court found no other liens or interests superior to the liens securing Oakland County's claim. *Id.* at 732. Between the two Oakland County liens,

---

[1] In reaching this conclusion, the bankruptcy court rejected Oakland County's argument that whatever portion of its claim is disallowed under § 502(b)(3) should be entitled to treatment as an unsecured pre-petition priority claim under 11 U.S.C. § 507(a)(8). *In re Shefa*, 524 B.R. at 732-33. The bankruptcy court found Oakland County's argument contrary to the plain language of § 507(a)(8). *Id.*

[2] Section 1111(b)(1)(A) provides:

> A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless--

> (i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

> (ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

11 U.S.C. § 1111(b)(1)(A).

the bankruptcy court concluded that Michigan law grants the tax line priority over the lien for water and sewerage charges. *Id*.

The bankruptcy court denied confirmation of Debtor's Plan, as amended, concluding that it was not feasible. *Id*. The bankruptcy court therefore found it unnecessary to address Oakland County's additional objections to the Plan, including its argument that the Plan should not be confirmed due to Debtor's bad faith in filing the bankruptcy case and proposing the Plan. *Id*. Finding no prospective reorganization after denying confirmation of the Plan and finding that Debtor has no equity in the Hotel, the bankruptcy court found grounds to grant Oakland County's motion to lift the automatic stay under 11 U.S.C. § 362(d). *Id*. at 743-44.

On February 3, 2015, Debtor filed a motion for reconsideration and for a stay of the January 20, 2015 decision pending appeal. The bankruptcy court denied the motion on February 9, 2015.

On February 23, 2015, Debtor filed a notice appealing the bankruptcy court's January 20 and February 3, 2015 decisions. Debtor identifies the following as issues raised on appeal:

1. Did the Bankruptcy Court erroneously deny confirmation to Debtor's Combined Disclosure Statement and Plan, as amended?

2. Did the Bankruptcy Court erroneously grant relief from stay to Oakland County?

3. Did the Bankruptcy Court erroneously not apply 11 U.S.C. section 502(b)(3) to the water portion of Oakland County's proof of claim?

9

4.      Did the Bankruptcy Court erroneously deny Debtor's motion for reconsideration?

5.      Did the Bankruptcy Court erroneously not fully grant Debtor's objection to Oakland County's proof of claim?

6.      Did the Bankruptcy Court erroneously find Debtor's plan not feasible?

7.      Did the Bankruptcy Court erroneously find that Debtor's financing was not sufficiently definite?

8.      Did the Bankruptcy Court erroneously look to whether Debtor had financing for the period of time subsequent to when it would have paid off Oakland County's proof of claim?

Many of these issues overlap. Oakland County filed a cross-appeal on March 9, 2015. Oakland County raises the following issue on appeal: "Did the Bankruptcy Court err when it disallowed a portion of the Oakland County Treasurer's Claim for delinquent real property taxes?"

## III.    Applicable Law and Analysis

### A.    The Bankruptcy Court's Analysis of the Oakland County Claim

Debtor argues that the bankruptcy court erred in not applying § 502(b)(3) to the water and sewerage portion of the Oakland County claim and thereby not fully granting Debtor's objection to the claim. Oakland County contends that the bankruptcy court erred when it disallowed the portion of its claim for delinquent real property taxes that exceeded the value of the Hotel, specifically $1,226,781.57. This Court finds no error in the bankruptcy court's analysis of the Oakland County Claim.

10

As the bankruptcy court explained:

Section 501 of the Bankruptcy Code governs the filing of proofs of claims.  Section 502(a) provides that a proof of claim filed under § 501 is deemed allowed unless a party in interest objects.  Section 502(b) provides that if an objection to a claim is made, the Court, after notice and a hearing, shall determine the amount of the claim and shall allow the claim in such amount except to the extent that one of the grounds for disallowance set forth in § 502(b)(1) through (9) applies.

*In re Shefa*, 524 B.R. at 729.  Debtor objected to the Oakland County claim based on

§ 502(b)(3), which provides that a claim shall not be allowed to the extent that "if

such claim is for a tax assessed against the property of the estate, such claim exceeds

the value of the interest in such property."  11 U.S.C. § 502(b)(3).  The bankruptcy

court was correct in holding as a matter of law that the water and sewerage portion of

the Oakland County claim is not a tax and therefore not disallowed under § 502(b)(3).

By its plain terms, § 502(b)(3) applies only to "tax[es] assessed against

property of the estate."  Therefore, "[n]ot all charges and fees assessed on a debtor's

property by a taxing authority are subject to the provision. Instead, § 502(b)(3) only

applies to ad valorem taxes, with state law dictating the scope of that term."  *In re 300*

*Washington St. LLC*, 528 B.R. 534, 548 (Bankr. E.D.N.Y. 2015).  As the bankruptcy

court correctly found, under Michigan law, the portion of Oakland County's claim

based on water and sewerage charges is not "a tax assessed against property of the

estate" based on the operation of Michigan's Revenue Bonding Act, Michigan

Compiled Laws Section 141.121(3).

Michigan's Revenue Bonding Act reads, in relevant part:

11

> Charges for services furnished to a premises may be a lien on the premises, and those charges delinquent for 6 months or more may be certified annually to the proper tax assessing officer or agency who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered, and the charges shall be collected and the lien shall be enforced in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes. The time and manner of certification and other details in respect to the collection of the charges and the enforcement of the lien shall be prescribed by the ordinance adopted by the governing body of the public corporation.

Mich. Comp. Laws § 141.121(3). Nothing in the plain language of this provision defines the charges for water or sewerage services as a tax. As such, this case is distinguishable from *In re Van Beckum*, No. 07-28650, 2009 WL 122754 (Bankr. E.D. Wis. Jan. 15, 2009), relied upon by Debtor.

*In re Van Beckum* involved Wisconsin law, which expressly provides that unless municipal public utility charges are paid by a specific date, "the arrears and penalty will be levied *as a tax* against the lot or parcel of real estate to which utility service was furnished and for which payment is delinquent." Wis. Stat. § 66.0809 (emphasis added). Michigan's statute, in comparison, does not define delinquent water and sewerage charges as a tax. Instead, section 141.121(3) does the following only: (1) provides that water and sewerage charges, when delinquent for six months or more, may be a lien on the property; and (2) grants authority to the proper tax assessing officer or agency (here, Oakland County) to act as a collecting agent for those charges, using the same manner provided for the collection of taxes. *See supra*. Moreover, the Michigan Supreme Court has held that water and sewerage charges are

12

not a tax.  *Ripperger v. City of Grand Rapids*, 62 N.W.2d 585, 587 (Mich. 1954)

(holding that sewage charges are not taxes by applying the reasoning stated previously

by the Michigan Supreme Court to reach the same conclusion with respect to water

service charges in *Jones v. Board of Water Commission of Detroit*, 34 Mich. 273

(1876)).

Debtor points out that Oakland County, on its Proof of Claim form, listed only

"[t]axes" as the basis for the claim.  The Debtor offers no legal argument, however,

for why this designation controls or impacts the Court's analysis.

Oakland County takes no issue with the bankruptcy court's conclusion that the

portion of its claim for water and sewerage charges is not subject to § 502(b)(3).

Oakland County contends, however, that no portion of its claim should be subject to

this provision.  On appeal, Oakland County asserts two arguments in support of this

contention.  First, Oakland County argues that the bankruptcy court's ruling is

contrary to the Tax Injunction Act.  Second, it argues that the ruling is contrary to

congressional intent.[3]

With respect to its first argument, Oakland County contends that the

bankruptcy court was bound by the Tax Injunction Act to the total tax amount for the

---

[3] In the bankruptcy court, Oakland County argued that § 1111(b)(1)(a) of the
Bankruptcy Code applies in this case, where Debtor plans to retain the property on
which a lien has attached, such that Oakland County should be allowed a secured
claim in the amount of the value of the Hotel and an unsecured claim for the
remaining portion of the obligation.  Oakland County does not mention
§ 1111(b)(1)A) of the Bankruptcy Code anywhere in its appeal brief.  This Court
therefore assumes that it has abandoned its argument based on this section.

2008-2011 tax years ($799,659.57) established through proceedings involving Debtor in the Michigan Tax Tribunal ("MTT"). Stated differently, Oakland County contends that its claim for taxes should have been allowed in the amount of $799,659.57 pursuant to the Tax Injunction Act.

The Tax Injunction Act provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C.A. § 1341. "It is well established, however, that the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that affect the collection of state taxes." *In re Hechinger Inv. Co. of Delaware, Inc.*, 335 F.3d 243, 247 (3d Cir. 2003) (citing cases). Courts have held "that the bankruptcy court may exercise jurisdiction over proceedings that would otherwise violate the [Tax Injunction] Act where the relief sought was necessary to the enforcement of specific Bankruptcy Code provisions." *In re Wilshire Courtyard*, 729 F.3d 1279, 1292 (9th Cir. 2013).

Section 505 of the Bankruptcy Code grants the bankruptcy court authority to "determine the amount or legality of any tax . . ." unless "the amount . . . was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case . . .." 11 U.S.C. § 505(a)(1), (2). However, neither this provision nor the Tax Injunction Act precluded the bankruptcy court from applying § 502(b)(3) to disallow the amount of the tax claimed to the

14

extent the claim exceeds the value of the Hotel.  In concluding that § 502(b)(3) applies to Oakland County's tax claim, the bankruptcy court did not "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law."  Nor did it set aside or attack the tax valuations reached through the MTT.

In its second argument, Oakland County contends that the bankruptcy court's application of § 502(b)(3) in this case is contrary to the legislature's intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Specifically, Oakland County contends that application of § 502(b)(3) conflicts with the intent of Congress, as articulated in *In re NVF Co*, 394 B.R. 33 (Bankr. Del. 2008), "to prevent a windfall to mortgagees and other lienors who would unfairly benefit from the payment of property taxes that would otherwise remain charges on the property" and to "prevent an injustice to unsecured creditors." *Id.* at 40 (internal quotation marks and citation omitted).  The bankruptcy court in *In re NVF* elaborated:

> The expansive amendment was Congress's response to a situation that often saw estates almost entirely depleted by taxes to the detriment of unsecured creditors-- in spite of the fact that the property was often thereafter abandoned to mortgagees or the taxing authorities. This was so because the taxes were construed, under many state statutes, to be taxes legally due and owing by the bankrupt personally although such tax debt might result in liens on the real estate.
>
> It sought to prevent the injustice where [t]he payment of taxes from the bankrupt estate would have the effect of clearing away tax claims which otherwise would have remained charges on the real estate in the hands of the mortgagees or the tax sales purchasers.
> . . .

15

   The windfall intended to be denied by § 502(b)(3) is easily perceived. A delinquent real estate tax can result in the tax being a lien against the real estate. Of course, the tax is also a claim against the property owner. If the property is abandoned or foreclosed upon by a mortgage holder, the mortgage holder or any other subsequent owner (such as in foreclosure) takes the property subject to the tax lien. Absent the application of § 502(b)(3), the taxing unit can collect from the debtor along with the unsecured creditors. To the extent the tax is paid to the taxing unit in that fashion, there will be a reduction or elimination of the tax lien on the property to the benefit of the successor owner. The application of the provision precludes that windfall to the successor owner.

394 B.R. at 40 (internal quotation marks and citation omitted).

   In *In re NVF*, the debtor owed approximately $1.4 million in real estate taxes and approximately $220,000 in unpaid utility charges, both secured by the debtor's mill.  394 B.R. at 35.  The mill was dilapidated and significantly damaged by fire and environmental contamination.  *Id*. at 38.  The debtor had abandoned the property.  *Id*. at 40.  The city in which the property was located had marketed the property for years, with no serious offers due to the substantial tax lien, as well as substantial hazardous waste remediation costs of $1.2 million, substantial repairs costs of $2.6 million, and substantial demolition costs of $1.6 million.  *Id*. at 38.  The Bankruptcy Court for the District of Delaware concluded that, as a result of these circumstances, "this [was] one of those rare cases where . . . strict application [of a statute] would produce a result that is demonstrably at odds with the legislative intent."  *Id*. at 39.  Specifically, the court concluded that the property had negative market value and no potential purchasers and thus no party stood to suffer a hardship or gain a windfall if

16

§ 502(b)(3) was found inapplicable.  *Id*. at 41.  The court further noted the priority given to tax liens for valuable municipal services and relied on " 'Congress' historic concern for the collection of taxes due and owing to national, states and local governments' " in concluding that § 502(b)(3) should not apply.  *Id*. at 41-42.  The court distinguished the cases relied upon by the debtor to argue that § 502(b)(3) should apply in that, in those cases, "the taxing authority had some other avenue to recover their claims beside the estate" (i.e. foreclosure).  *Id*. at 42.

The court's reasoning in *In re NVF* is not applicable in the present matter where the property has value, has not been abandoned by the debtor, and is marketable. Unlike the municipality in *In re NVF*, Oakland County is not faced with recovering nothing for the services provided for the property.  Only a portion of its tax claim was disallowed by the bankruptcy court under § 502(b)(3).  Debtor proposed to pay in full the appraised value of the Hotel against which the tax was assessed.  In short, this Court does not find this to be "one of those rare cases where [] a strict application [of § 502(b)(3)] would produce a result that is demonstrably at odds with the legislative's intent." *In re NVF, supra*.  According to its plain language, the applicability of § 502(b)(3) is not dependent on whether the property is retained by the estate and therefore the Court concludes that the bankruptcy court did not err in rejecting Oakland County's second argument.

### B.  The Bankruptcy Court's Decision to Deny Confirmation of Debtor's Plan, As Amended

17

Pursuant to the Bankruptcy Code, in order to confirm a plan of reorganization, the bankruptcy court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  Although this provision "does not use the term 'feasible' or 'feasibility,' the requirement imposed by § 1129(a)(11) is commonly known as the 'feasability' test for confirmation."  *In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 478 (Bank. S.D. Ohio 2011) (internal quotation marks, citation, and brackets omitted).  It is the debtor's burden to prove, by a preponderance of the evidence, that the plan is not likely to fail.  *In re Griswold Bldg., LLC*, 420 B.R. 666, 697 (Bankr. E.D. Mich. 2009) (internal quotation marks and citation omitted).

"Feasibility is fundamentally a factual question since it necessarily depends upon a determination of the reasonable probability of payment."  *In re Brice Road Devs., LLC*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008) (quotation marks and citation omitted).  The factors relevant to a finding of feasibility are:

> "(1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan."

*Id.* (quoting *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.*, (*In re U.S. Truck Co.*), 800 F.2d 581, 589 (6th Cir. 1986)). These factors are not exhaustive. *Id.* Courts also have considered "the past financial performance of the debtor, the availability of credit if the plan is dependent on additional financing, and the term of the plan." *Id.*

When considering the feasability of Debtor's Plan, the bankruptcy court found it significant that Debtor has neither any capital of its own nor any income from any business operations. *In re Shefa*, 524 B.R. at 741. Thus the bankruptcy court found Debtor's ability to pay Oakland County's secured claim of $690,000.00 dependent upon its receipt of funds from an outside source. Nevertheless, Debtor had no commitment from KFG, or any other source, to pay this amount or the additional amounts needed to renovate and rehabilitate the Hotel. *Id.* at 741-42. The bankruptcy court concluded that neither an expression of interest from an investor nor a non-binding letter of intent is sufficient to demonstrate a plan's feasibility. *Id.* at 742. Thus the bankruptcy court found that Debtor failed to show that there is a reasonable probability that it will make the lump sum payment of $690,000.00 to Oakland County as proposed in the Plan. *Id.*

The bankruptcy court found it even less likely that Debtor would be able to make the monthly payments of $9,353.35 to the unsecured claims in class three, as required under the proposed amended plan. *Id.* Moreover, as the bankruptcy court pointed out, the proposed monthly payment did not even account for Oakland

19

County's $1,870,198.12 water and sewerage charges which the bankruptcy court concluded also needed to be included in Debtor's class three unsecured claims.  *Id.* Assuming the thirty percent distribution to class three claims proposed in Debtor's modified plan, Debtor would have to pay $14,028.85 per month to class three claimants.

On appeal, Debtor contends that "the [b]ankruptcy [c]ourt erred by applying too high of a standard for finding feasibility" and not giving sufficient deference to the opinion of sophisticated investors who expressed a belief that the business plan for the Hotel would succeed.  (ECF No. 8 at Pg ID 781-83.)  Debtor argues that " '[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasability.' "  (*Id.* at Pg ID 780, quoting Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1129.03[11] (15th ed. 2004).) Debtor points out that bankruptcy courts demand less and less specific proof to prove feasibility as one moves further away from the time of confirmation.  (*Id.* at Pg ID 782 (quoting *In re DBSD N. Am., Inc.*, 634 F.3d 79, 106-08 (2d Cir. 2010).)  Debtor accurately states the law.  Nevertheless, this Court finds no error in the bankruptcy court's application of the law or feasibility analysis.

Responding to a claimant's argument that a bankruptcy court cannot confirm a plan unless the debtor proves "specifics", the Second Circuit stated in *In re DBSD North America Inc.*:

20

> That is true at some level of generality, but exactly how specific those "specifics" must be depends on the circumstances. In most situations, the time immediately following bankruptcy will call for fairly specific proof of the company's ability to meet its obligations-- as here, where it was "undisputed that the Debtors have commitments for working capital financing for the next two years." DBSD I, 419 B.R. at 203. As one moves further away from the time of confirmation, however, the proof will necessarily become less and less specific.

634 F.3d at 107.  The problem for Debtor is the absence of "fairly specific proof of [its] ability to meet its obligations" in "the time immediately following bankruptcy[,]" regardless of the specificity the bankruptcy court may have sought with respect to the future.  Debtor has not shown that the bankruptcy court erred in finding that Debtor lacked the financial wherewithal to make the payments required under the Plan or that it lacked a firm commitment by KFG or anyone to provide financing for the Plan-- including the financing required in the short term to pay creditors.

Knafo did testify that KFG had sufficient funds to fund the plan.  As the bankruptcy court pointed out, however, Knafo also emphasized during his testimony that KFG is not presently committed either to make the loan described in the loan agreement or provide the equity described in the letter of intent to Debtor.  In fact, Elhadad, Knafo, and Eric Aouizerats (a consultant hired by Elhadad) conceded that neither KFG, nor any other investor or lender, is obligated to put any money into the project.  Knafo and Aouizerats may have testified that the proposed renovation and redevelopment of the Hotel could be successful.  However, they had prepared no projections of future operations for the Hotel once it was renovated and redeveloped.

21

As the bankruptcy court indicated, "[t]he purpose of the feasibility requirement of § 1129(a)(11) 'is to protect creditors against unrealistic plans that have little or no chance of success.' " *In re Shefa*, 524 B.R. at 741 (quoting *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 421 (Bankr. S.D.N.Y. 2003)). "[C]reditors should not be expected to be bound by the terms of plans entailing visionary schemes which promise creditors more than the debtor can possibly deliver." *In re Arts Dairy, LLC*, 432 B.R. 712, 716-17 (Bankr. N.D. Ohio 2010) (citing *In re Danny Thomas Props. II Ltd. P'ship*, 241 F.3d 959, 963 (8th Cir. 2001)). Therefore, while "the proponent of a Chapter 11 plan need not show that success is guaranteed[,]" it must demonstrate that there is "a reasonable assurance of commercial viability," *id*. at 717, and "a 'reasonable probability' that the debtor will be able to make all of the payments to creditors according to the terms provided in the plan." *In re Waterford Hotel, Inc.* 497 B.R. 255, 263 (Bankr. E.D. Mich. 2013) (quoting *Trenton Ridge Investors*, 461 B.R. at 478). The bankruptcy court did not err in finding that Debtor failed to make these showings.

Oakland County alternatively argues on appeal that the Plan was properly rejected because Debtor has not acted in good faith in filing the bankruptcy case or in proposing the plan. Whether Debtor has acted in good faith is a question of fact, *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir. 1992), which is dependent on a multitude of factors. *See In re Laguna Assoc. Ltd. P'ship*, 30 F.3d 734, 738 (6th Cir. 1994) (providing a list of eight non-exhaustive factors relevant to

22

whether the debtor acted in bad faith).  The bankruptcy court declined to engage in a good-faith analysis, having concluded that the Debtor's Plan is not feasible.

A district court may address "any issue presented by the lower court record, even if not addressed in the bankruptcy court." *Eastland Mortgage Co. v. Hart (In re Hart)*, 923 F.2d 1410, 1414 (10th Cir. 1991). "A reviewing court may not, however, decide factual issues not addressed by the bankruptcy court." *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 669 (10th Cir. 1993) (citing *In re Love*, 957 F.2d 1350, 1361 (7th Cir. 1992)).  Therefore, this Court will not address in the first instance whether Debtor filed for bankruptcy or submitted its plan in bad faith.

### C.    The Bankruptcy Court's Decision to Lift the Automatic Stay

Debtor contends that the bankruptcy court erred in granting Oakland County's request to lift the automatic stay.[4]  The Bankruptcy Code authorizes the bankruptcy court to grant relief from the automatic stay on request of a party in interest and after notice and a hearing under certain circumstances, including:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

---

[4] In its brief on appeal, Oakland County contends that Debtor has waived its challenge to the bankruptcy court's decision to grant Oakland County's motion for relief from the automatic stay due to Debtor's failure to address the issue in its opening appeal brief.  Debtor indicates in reply, however, that it did not waive the issue because the bankruptcy court's rationale for lifting the stay was based on its conclusion that the plan should not be confirmed and thus both issues are intertwined.  In other words, by arguing that the bankruptcy court erred in not confirming the plan, Debtor maintains that it argued why the bankruptcy court erred in granting Oakland County's motion for relief from the automatic stay.

> (2) with respect to a stay of an act against property under subsection (a)
> of this section, if--
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).  The bankruptcy court found justification to lift the stay under

subsections (1) and (2).

With respect to subsection (1), the bankruptcy court concluded that sufficient

cause to lift the automatic stay was supported by the following facts: (1) Debtor's

Chapter 11 case had been pending already for nearly a year; (2) the Hotel was not

being operated since that time; (3) Debtor had not paid property taxes on the Hotel;

(4) the Hotel's condition had continued to deteriorate during the pendency of the

bankruptcy case; (5) Debtor provided Oakland County with no protection for its

interest in the Hotel during the Chapter 11 case; and (6) the court denied confirmation

of the Plan.  *In re Shefa*, 524 B.R. at 743.  Aside from contending that the bankruptcy

court erred in denying confirmation of the Plan, Debtor fails to indicate why the

remaining facts did not provide cause for lifting the automatic stay.  For the reasons

discussed in the previous section, this Court finds no error in the bankruptcy court's

decision to deny confirmation of the Plan.  It therefore finds no error in the decision to

lift the stay under subsection (1).  In any event, subsection (2) also provides grounds

to lift the stay and Debtor fails to show that the bankruptcy court erred in concluding

that the stay should be lifted under this provision.

24

In order to lift the stay under subsection (2), the bankruptcy court had to find that Debtor did not have any equity in the Hotel and that the Hotel is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).  Debtor does not have any equity in the Hotel as the value of the Hotel is less than Debtor's secured claims.  *See Stephens Indus., Inc. v . McClung*, 789 F.2d 386, 392 (6th Cir. 1986) (citing *In re Mellor*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984) (" 'Equity,' . . . is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors.").  Where the debtor lacks equity in the property, the debtor bears the burden of showing that the property is necessary for an effective reorganization.  *See* 11 U.S.C. § 362(g)(2) (providing that the party requesting relief from the automatic stay under subsection (d) has the burden of proof on the issue of the debtor's equity in the property, and that the debtor "has the burden of proof on all other issues.").

To satisfy this burden, it is not enough for the debtor to show "that if there is conceivably to be an effective reorganization, this property will be needed for it[.]"  *In re Plastech Engineered Prods., Inc.*, 382 B.R. 90, 109 (Bankr. E.D. Mich. 2008).  Instead, the debtor must show "that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375-86 (1988)) (emphasis in original).  Again, for the reasons discussed in the preceding

25

section, the Court finds no error in the bankruptcy court's conclusion that there is not

"a reasonable possibility of a successful reorganization within a reasonable time."

Therefore, the Court finds no error in the bankruptcy court's decision to lift the

automatic stay pursuant to § 362(d)(1) or (2).

### D.     Conclusion

In short, the Court holds that the bankruptcy court did not err by concluding

that 11 U.S.C. § 502(b)(3) does not apply to the portion of Oakland County's claim

representing water and sewerage charges and by disallowing the portion of Oakland

County's claim for unpaid taxes exceeding the value of the Hotel.  The Court further

holds that the bankruptcy court did not err in denying confirmation to Debtor's

Combined Disclosure Statement and Plan, as amended, as the Plan was not shown to

be feasible. Nor did the bankruptcy court err in granting Oakland County's request for

relief from the automatic stay.  As such, the bankruptcy court also did not err in

denying Debtor's motion for reconsideration.

Accordingly,

**IT IS ORDERED** that the bankruptcy court's January 20, 2015 Opinion and

Order and February 9, 2015 Order are **AFFIRMED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 22, 2015

26

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 22, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager
